Kenneth R. BOND, Appellant,

v.

STATE of Indiana, Appellee.

No. 784S295.

Supreme Court of Indiana.

Feb. 27, 1986.

Charles H. Criss, Peru, for appellant.

Linley E. Pearson, Atty. Gen., Michael B. Murphy, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Kenneth R. Bond was found guilty by a jury in the Fulton Circuit Court of the crimes of class C felony battery resulting in serious bodily injury and class A felony attempted rape while armed with a deadly weapon. Appellant subsequently was sentenced by the trial judge to a term of twenty (20) years imprisonment for the attempted rape conviction and to five (5) years imprisonment for the conviction of battery resulting in serious bodily injury, said terms to be served concurrently. Appellant now directly appeals and raises the following four issues:

1. alleged error by the trial court in excusing a prospective venireman;

2. admission of evidence of Appellant's prior conviction for sale of a dangerous drug;

3. instructions to the jury; and

4. sufficiency of the evidence.

The facts adduced during trial tend to show that twenty-seven year old Appellant had known the victim since Appellant was eleven years old, having grown up with the victim's children and having been in her home many times. In fact, it was not unusual for Appellant to stay at the home overnight since he maintained a friendly relationship with the family. On April 10, 1979, Appellant and his friend, "Turtle" Clark, were making repairs to Appellant's vehicle during which time they were drinking beer and smoking marijuana. A friend stopped by and offered the two LSD and Appellant took some. Appellant subsequently went to the victim's home where, while drinking coffee with the victim, he suddenly put a knife to her throat and told her to go into the bedroom where he ordered her to disrobe. After some struggle over getting her clothes off, Appellant finally relented and told her to go into the living room where he said he needed help. He apparently wanted her to drive him to Logansport State Hospital but she said she did not have a vehicle available and would not go in an automobile with him even if she did have one there. Appellant thereafter again ordered her into the bedroom and again ordered her to disrobe. The victim responded by running out the front door but Appellant tackled her on the front lawn, put his hand over her mouth and dragged her back into the house by the hair. After another scuffle, Appellant dragged the victim into the bedroom, threw her on the bed and said "I'm going to screw you all night and then I'm going to kill you." When Appellant unzipped his trousers and drew close to the victim, who was naked from the waist down, she struck him with a knife from a table by the bed and he became enraged. He repeatedly struck her with his fist, kicked her, and stabbed her with a knife causing a puncture wound to her breast and to one of her lungs. The victim testified that Appellant eventually turned the lights on in the bedroom and stated, "Oh, my God, what have I done?" Appellant and the victim then returned to the living room where Appellant later called an ambulance for her. At one time, the victim observed Appellant with his head in his hands, rocking back and

forth, saying repeatedly, "Make it stop." The victim stated that although it was apparent Appellant had been drinking and was intoxicated, she did not think he was intoxicated to such an extent that he did not know what he was doing or was unable to control himself. The victim said Appellant's eyes looked glazed but that he usually wore glasses and she had never before seen him that closely when he wasn't wearing them. At the hospital the victim was found to have a scalp laceration, a punctured lung, a chipped rib and bruises about her left eye and buttocks. We note that the evidence shows that Appellant quickly left the vicinity of this crime scene and was not arrested until sometime in 1983 when he was found working in Texas.

I

■ Appellant first claims that the trial court permitted error by following a policy of allowing prospective jurors to be excused once for any reason during their service on the prospective juror list. Although Appellant complains about this procedure in general, the only complaint he makes and the only example he gives of this practice by the trial court is with regard to prospective juror Mark Harris who was called as a prospective alternate juror after the original twelve (12) jurors had been selected. Harris was an optometrist who was given only a few hours notice that he was needed for jury duty. The trial court excused him due to his claim that such short notice placed undue hardship upon his patients who already had their appointments. The trial court accordingly put another person in the alternate juror position. This cause was tried, however, by the original twelve (12) jurors and the service of the alternate was never required. Appellant therefore has failed to show any prejudice by this alleged error and is not entitled to reversal. *Yager v. State* (1982) Ind., 437 N.E.2d 454, *reh. denied.* He does not show nor does he even claim that there was a systematic exclusion of any prospective juror or of any groups of prospective jurors. He therefore presents no error on this issue.

II

■ Appellant next claims the trial court erred by permitting the State to cross-examine him about his prior conviction for the sale of a dangerous drug. The trial court instructed the jury that they were to use such evidence only for the purpose of determining Appellant's credibility. Appellant contends the admission of evidence indicating such a conviction was not permitted by *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210. Appellant's contention is not determinative of the issue here; *Ashton* applies when the prior crime is offered for impeachment purposes only. In the instant case, the prior conviction was admissible as substantive evidence, not merely impeaching evidence. Appellant entered a plea of not guilty by reason of insanity which opened the door to admission of evidence about his past activities relating to this subject. This is particularly true in Appellant's case since he testified a great deal about his prior involvements with drugs and alcohol. Appellant's testimony specifically established the fact that he had used drugs for a period of years and it was not unusual for him to mix various types of drugs, such as mixing alcohol, "pot", LSD, or other substances. Appellant also testified that he did not know that combining certain drugs with others, or of particular drugs with beer, would cause a combined effect in excess of the effect of each substance alone. This was all to substantiate his insanity claim and his claim to have lacked the ability to be aware of the criminal nature of what he was doing at the time of the crime. The State correctly argues that Appellant opened the door on the issue of his history and knowledge of drugs and that therefore, it was proper to show that he was at one time convicted of selling drugs which connotes knowledge of their use and effect. Although the trial court by its instruction to the jury limited this evidence to impeaching evidence, the limitation was unwarranted. Nonetheless, the limiting instruction worked to Appellant's advantage by not allowing the jury

to consider the prior conviction probative of Appellant's knowledge and use of drugs. For all of these reasons, we find that the trial court did not err by permitting cross-examination of Appellant on this subject.

### III

■ Appellant next claims the trial court's Instruction No. 14 was erroneous. Instruction No. 14 refers to the defense of involuntary intoxication. It appears, however, Appellant has waived this issue. The only reference Appellant made to any final instructions in his "Motion to Correct Errors" to the trial court reads as follows:

"THE COURT ERRED IN PERMITTING CERTAIN FINAL INSTRUCTIONS TO BE READ TO THE JURY

*Statement of the facts and grounds upon which error is claimed:* Defendant tendered several written final instructions to the Court requesting that they be adopted by the Court and read to the Jury. However, the Court rejected several of those written instructions. Furthermore, Defendant objected to several of the Court's final instructions which were nevertheless read to the Jury. Defendant incorporates herein his objections and arguments presented to the Court during the hearing on final instructions."

Furthermore, the Record shows that Appellant's objection to Instruction No. 14 was made when it was tendered to counsel by the trial court prior to its being given to the jury and was only a general statement that did not in any way refer to the grounds Appellant now raises in this direct appeal. A statement of claimed errors must be specific or the issue will be considered waived. *Spivey v. State* (1971), 257 Ind. 257, 274 N.E.2d 227. Errors not properly preserved during trial and by the motion to correct errors are not available on appeal. *Survance v. State* (1984), Ind., 465 N.E.2d 1076, *reh. denied; Sidener v. State* (1983), Ind., 446 N.E.2d 965. Appellant has waived this issue.

### IV

■ Finally, Appellant claims his convictions were contrary to law since the evidence clearly showed that he was so intoxicated with drugs and alcohol that he was not capable of forming the intent to commit the alleged crimes. The issue is not one of sufficiency of evidence, as Appellant asserts, but rather whether the verdict is contrary to all the evidence and, hence, contrary to law. It is akin to an insanity defense which provides a person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense. Defendant did, in fact, make an insanity defense in this cause and the testimony concerning his ability to appreciate the wrongfulness of his conduct because of mental disease or defect was in conflict. A defendant who enters a plea of insanity has the burden of proving such by a preponderance of the evidence. Ind.Code § 35-41-4-1(b) (Burns 1985). Where the party with the burden suffers a negative judgment, as Appellant here, he has a monumental burden if he seeks to upset the finding of the trier of fact on appeal. As this Court stated in *Turner v. State* (1981), Ind., 428 N.E.2d 1244, "The issue is not one of sufficiency of evidence but rather whether the verdict was contrary to all the evidence and hence contrary to law." In such a case, we will reverse only where the evidence is without conflict and leads to but one conclusion and the trier of fact has reached an opposite conclusion. There was a great deal of evidence on the subject of Appellant's intent. Upon filing a plea of not guilty by reason of insanity, the trial court appointed two psychiatrists to examine Appellant. Both testified that he was legally insane such that he lacked substantial capacity to appreciate the wrongfulness of his conduct and to conform his conduct to requirements of the law. There was other evidence, however, that told the jury that while Appellant obviously had been drinking and was intoxicated, he appeared to be in normal control of his facul-

ties and his activities. There was thus conflict on this subject to be resolved by the jury. *Hill v. State* (1985), Ind., 483 N.E.2d 746; *Turner, supra; Gentry v. State* (1984), Ind., 471 N.E.2d 263. There were ample facts before the jury to justify their determination of Appellant's guilt beyond a reasonable doubt and we will not disturb their judgment.

Finding no error, we affirm the trial court.

GIVAN, C.J., and DeBRULER, SHEPARD and DICKSON, JJ., concur.