**Robert L. WILSON, Appellant,**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee,**
**(Plaintiff Below).**

No. 385S110.

Supreme Court of Indiana.

Oct. 23, 1987.

Susan K. Carpenter, Public Defender, C.H. Gardner, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Following his jury trial, defendant was found guilty but mentally ill in multiple felony counts. This direct appeal argues that recent rulings from the United States Supreme Court require reversal of his convictions.

The issue presented is whether the State's elicitation of testimony concerning the defendant's exercise of his rights to remain silent and to consult with an attorney, when such testimony was presented as evidence of defendant's sanity, constituted fundamental error warranting reversal of the defendant's convictions. At the time of defendant's trial, the trial court correctly ruled such testimony was admissible, in accordance with *Sulie v. State* (1978), 269 Ind. 204, 379 N.E.2d 455. However, subsequent decisions of the Supreme Court, handed down since the conclusion of defendant's trial, compel us to reverse defendant's convictions and remand the case for a new trial.

Rebutting the defendant's insanity defense, Detective David Payne testified about the circumstances surrounding the defendant's statement given to police following his arrest. Over defendant's objection, Payne testified that after the interview started, the defendant indicated his desire to talk to a lawyer before he continued. During the State's closing argument, the prosecutor remarked as follows:

[Defendant's] voice sounded normal, sounded like—same—same as any other day. No indication of any sort of hallucination, delusions, strange talk or demeanor over the phone. Once they get defendant back to jail, advise him of his rights. You have a right to a lawyer. You want to talk to one, then fine. We'll stop, and then they start through the interview and what—what—what happens? Is advised of his rights, says, yeah, I understand. I'm a little mixed up but I understand what you're telling me. Then the insanity defense comes in. I've been having all these mental problems, but I understand what you're telling me. Did he understand what Sergeant Payne was telling him? Let's go through that part of it. Gave him his social security number. Gave him his d.o.b., address, name, and they go through all those innocuous, harmless questions and then comes the clincher, ladies and gentlemen. Did he know what Sergeant Payne was talking about when he said do you want a lawyer, we'll stop? Sure he did. Sure he did. Why? How did he know that? Sergeant Payne asked him, well, did she let you in or did you break in? I won't answer any more questions. I won't answer any more questions. Shows you that he knew, he understood what Sergeant Payne was saying. He doesn't remember now. He doesn't remember now. That all stopped October 6th. Remembers bits and pieces but don't remember any details.

In *Wainwright v. Greenfield* (1986), 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623, the Supreme Court of the United States has since ruled that the use of an accused's silence after receiving *Miranda* warnings as evidence of his sanity violated the due process clause of the Fourteenth Amendment. Justice Stevens, writing for seven members of the Court, was persuaded that the reasoning in *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91, prohibiting a prosecutor from using a defendant's post-*Miranda* silence on cross-examination to impeach the defendant's exculpatory explanation of his participation in the crime, was also applicable when the defendant's silence is used as evidence of the defendant's sanity.

The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence

to impeach his trial testimony. It is equally unfair to breach that promise by using silence to overcome a defendant's plea of insanity. In both situations, the state gives warnings to protect constitutional rights and implicitly promises that any exercise of those rights will not be penalized. In both situations, the State then seeks to make use of the defendant's exercise of those rights in obtaining his conviction. The implicit promise, the breach, and the consequent penalty are identical in both situations.

*Greenfield,* 474 U.S. at 292, 106 S.Ct. at 639, 88 L.Ed.2d at 630–31.

The State presents three arguments in opposition. First, it attempts to distinguish *Greenfield* by suggesting that in the instant case, the defendant's *silence* was not being used against him, but rather, that what the defendant *said* was being used to show his sanity at or near the time of the offense. This argument is untenable in light of the Supreme Court's observation that post-*Miranda* silence "does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted." *Greenfield,* 474 U.S. at 295 n. 13, 106 S.Ct. at 641 n. 13, 88 L.Ed.2d at 632 n. 13.

Second, the State urges this Court to deem the issue waived because the defendant's objection to Detective Payne's testimony was not based on the improper use of post-*Miranda* silence as evidence of sanity; rather, defendant objected on the grounds that the testimony was cumulative and irrelevant. Moreover, defendant made no objection to the prosecutor's remarks during final arguments.

■ In general, a party may not object to the admission of evidence on one basis at trial and on a different basis on appeal. *Golden v. State* (1985), Ind., 485 N.E.2d 51. Moreover, errors not properly preserved during trial and in the motion to correct errors are not available for review on appeal. *Bond v. State* (1986), Ind., 489 N.E.2d 504. However, these procedural prerequisites do not apply when the error is fundamental. *Wright v. State* (1985),

Ind., 474 N.E.2d 89. "Such [fundamental] errors have been variously described as a failure to meet the requirements of due process of law, gross error which offends our concept of criminal justice, and the denial of fundamental due process." *Reynolds v. State* (1984), Ind., 460 N.E.2d 506, 508 (quoting *Nelson v. State* (1980), 274 Ind. 218, 219, 409 N.E.2d 637, 638). Merely because the error relates to a violation of a constitutional right does not, in and of itself, render it fundamental error requiring this Court to consider the matter absent an objection at trial. *Reynolds, supra; Crosson v. State* (1980), 274 Ind. 247, 410 N.E.2d 1194. To survive the procedural requirements, the error must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process. *See Shoulders v. State* (1985), 480 N.E.2d 211; *Reynolds v. State, supra; Mitchell v. State* (1983), Ind., 455 N.E.2d 1131.

■ The record before us demonstrates that the error was fundamental and not subject to waiver. Applying the pronouncements in *Greenfield, supra,* as we must, the admission of evidence and prosecutor's closing argument thereon must now be deemed as a violation of defendant's constitutional rights to silence and counsel. Considering the jury's ultimate determination that the defendant was mentally ill but able to appreciate the wrongfulness of his conduct, the potential for harm is substantial. We are therefore precluded from applying the doctrine of waiver to avoid consideration of defendant's argument on appeal.

■ The State finally contends that the *Greenfield* holding should not be applied retroactively to the instant case. Resolution of this issue is controlled by the recent decision in *Griffith v. Kentucky* (1987), 479 U.S. ——, ——, 107 S.Ct. 708, 716, 93 L.Ed.2d 649, 661, wherein the Supreme Court held that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final.

The judgment of conviction is therefore reversed and the case is remanded for a new trial.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.