Clarence STOUT, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 48A04–9103–PC–71 [1].

Court of Appeals of Indiana, First District.

Oct. 8, 1991.

1. This case was diverted to this office by direction of the Chief Judge.

Susan K. Carpenter, Public Defender, Hope Fey, Deputy Public Defender, Indianapolis, for appellant-petitioner.

Linley E. Pearson, Atty. Gen., Sue A. Bradley, Deputy Atty. Gen., Indianapolis, for appellee-respondent.

ROBERTSON, Judge.

Clarence Stout appeals from the denial of his petition for post-conviction relief. The Indiana Supreme Court affirmed Stout's conviction of and sentence for class A felony child molesting following a direct appeal in *Stout v. State* (1988), Ind., 528 N.E.2d 476 on September 22, 1988. Stout states essentially six issues in this appeal, but one necessitates reversal: whether the admission of evidence of Stout's postarrest invocation of his right to remain silent, and the prosecution's use of it as evidence of Stout's sanity, can be said to be harmless beyond a reasonable doubt. Stout raises this issue both as fundamental error and in the context of his claims of ineffective assistance of trial and appellate counsel.

In *Wainwright v. Greenfield* (1986), 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623, the United States Supreme Court held, despite procedural default on the issue before the state courts, that it was fundamentally unfair for a state prosecutor to breach the implied promise contained in the *Miranda* warnings, that silence will carry no penalty, by using a criminal defendant's postarrest, post-*Miranda* warnings silence as evidence of sanity and that such an affront to the Due Process Clause warranted a new trial. The Indiana Supreme Court agrees that error of this nature is fundamental and not subject to waiver. *Wilson v. State* (1987), Ind., 514 N.E.2d 282, 284. *See, also, Heyward v. State* (1988), Ind.App., 524 N.E.2d 15, 19 (Appellate court could review issue raised in post-conviction petition despite failure to preserve or raise error in direct appeal).

The record reflects that during the State's examination of Detective Koons, the investigating officer, the prosecutor wanted to know whether Koons had asked Stout if he'd done what was claimed. The officer responded,

"Yes, I did. I asked him if he had fondled or touched [K.] in any way on that day. He denied doing so. I further asked him concerning the incident if he had any knowledge of anybody seeing him enter the back entrance, the service entrance to Maplewood Cemetery. At that point, Mr. Stout looked at me, and he said, 'I think I want an attorney.'"

The prosecutor's questioning on this topic continued:

Q: And at the time when he had concluded by asking for an attorney, how was his ... how did he appear to you at that time?

A: He appeared worried. His attitude or his general characteristics, facial expression and so forth had changed dramatically from the time I first contacted him.

In its closing statement, the prosecution argued:

And it wasn't until Detective Koons said to him, he said, well, what if, if somebody else seen you out there possibly? That's when he said what? I'll tell the truth? No. He said "Let me talk to a lawyer," that's what he said. He knows the system. He even quoted to you the penal code of California, section 288. He told you that he knew that he had the right to stop being, from being questioned. He knows the system. He knows how to work the system, and that's what he's trying to do in this case with you.

In assessing the probable impact of the wrongly admitted evidence and argument upon the jury, we must discern whether there was a substantial likelihood that the error contributed to the verdict. *Bowman v. State*, 577 N.E.2d 569 (Ind., 1991) citing *Miller v. State* (1982), Ind., 436 N.E.2d 1113, 1114. If we are unable to say with fair assurance, after having pondered all that happened, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. *Miller*, 436 N.E.2d at 1114; *Kotteakos v. United States* (1946), 328 U.S. 750, 764–67, 66 S.Ct. 1239, 90 L.Ed. 1557. Conflicting evidence upon the essential issue precludes us from concluding that there is no substantial likelihood the erroneous evidence contributed to the verdict. *Bowman*, 577 N.E.2d 569.

Stout having admitted molesting the victim, though not in the manner she described, and molesting numerous other victims, the central issue at trial became one of his sanity at the time of the offense. Stout maintained that he suffered from a Post–Traumatic Shock Disorder as a consequence of his experiences in Vietnam and that part of his total experience during the war included sexual activity with prepubescent, pubescent, and post-pubescent females. Although the three psychiatric witnesses were unable to agree that Stout suffered from PTSD or on the affect such a condition might have upon his sanity, all agreed that Stout was a pedophile. Given his condition or conditions, however, not one of the three psychiatrists was able to conclude that Stout could conform his conduct to the requirements of the law at the time of the offense. Stout conceded and the psychiatric witnesses all testified that Stout's appreciation of the wrongfulness of his conduct was never in doubt.

Evidence adverse to Stout's defense came primarily from Stout's younger brother, the victim's father. He expressed the opinion based upon his relationship with his brother and the fact that he had lived with Stout for short intervals of time after Stout had returned from Vietnam, that Stout was sane, had always been mean, and would control this meanness in front of his mother and strangers. This evidence is contrary to Stout's mother's own testimony that she had observed Stout's violent rages and that she had sought help for him because he could not control his temper: "I believe he doesn't ... he's not able to ... it comes to the point he's not able to realize until after he's done something. It's like he's compelled to do these things, and then he wishes he hadn't done them afterwards."

Stout's present wife, a defense witness, also offered evidence from which the jury might infer that Stout had the ability to control his conduct. Stout's wife testified that she knew Stout for a period of about four months before she married him. Her impression of him initially was that he was extremely nice and sensitive, unlike other men she had known. Though Janice Stout reported that prior to her marriage to him, Stout became violent unexpectedly and tried to choke her, the jury might nonetheless infer that during the period when their relationship was forming, Stout was able to control his behavior. There is also testimony in the record from one of Stout's former wives that Stout would act "normal" in front of others *after* an incident and her opinion that she thought Stout could conform his behavior but didn't want to conform, that she believed he would weigh his chances against getting caught and then would go ahead and act. Stout himself testified about his wartime experiences and the nature of his familial relationships and admitted his prior acts with children. No single witness, other than the three expert witnesses, testified concerning Stout's ability to conform his sexual conduct with the requirements of the law.

We find the evidence recited above to be sufficiently conflicting as to raise grave doubt about the impact of the *Greenfield* error. While the lay witnesses certainly had greater opportunity to observe Stout, the expert witnesses perhaps had greater understanding of his mental disease, defect, or illness. The fact that there is sufficient evidence to sustain the verdict is not enough; we must be assured that the likelihood of the error influencing the

jury's verdict was not substantial. Having examined all of the evidence of record, including Stout's own startling testimony about his involvement in the war and his life subsequent thereto, we are unable to conclude that the use of his postarrest silence as evidence of sanity did not have an impact upon the jury's verdict.

■ Finally, we observe that had appellate counsel raised the use of Stout's postarrest silence in his direct appeal the *Greenfield* rule would have been given retroactive application as Stout's case was pending on review or not yet final. *See Griffith v. Kentucky* (1987), 479 U.S. 314, 329, 107 S.Ct. 708, 716, 93 L.Ed.2d 649; *Wilson*, 514 N.E.2d at 284; *cf. also Ramos v. State* (1989), Ind.App., 541 N.E.2d 300 (Change of law occurred after case became final). For these reasons, we hold that the trial court erred in denying Stout's petition for post-conviction relief. The judgment of the trial court is reversed and Stout is entitled to a new trial.

Judgment reversed.

RATLIFF, C.J., and MILLER, J., concur.