**Bruce Allen WILSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 17A03–9703–CR–77.

Court of Appeals of Indiana.

Dec. 11, 1997.

Susan K. Carpenter, Public Defender, Lorraine L. Rodts, Deputy Public Defender, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, John B. Herriman, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

STATON, Judge.

On July 19, 1995, Wilson was convicted following a trial by jury for Burglary, a class B felony, and Theft, a class D felony. This court reversed Wilson's Burglary conviction on November 8, 1996. Later on November 15, 1996, the trial court entered a restitution order based upon Wilson's Theft conviction which required him to pay his victims $150. Wilson appeals this restitution order and his underlying Theft conviction. Wilson raises four issues on appeal, two of which are dispositive. We restate them as:

I. Whether the trial court had the authority to enter a restitution order based upon Wilson's Theft conviction.

II. Whether the prosecutor committed fundamental error at trial by referring to Wilson's invocation of his right to remain silent after he had received *Miranda* warnings.

We affirm in part, reverse in part, and remand with instructions.

### I.

### *Restitution Order*

Wilson contends that because the trial court failed to attach a restitution order to his Theft conviction at the time he was originally sentenced, the trial court lacked jurisdiction to enter such an order after his Burglary conviction was vacated. Wilson had been sentenced to fifteen years, eight suspended, for his Burglary conviction. He was to serve a portion of the suspended sentence on probation, and as a term of his probation, Wilson was ordered to pay restitution to the victims of his Burglary. The court also sentenced Wilson to three years, executed, for his Theft conviction.

█ On November 8, 1996, this court reversed Wilson's Burglary conviction, but we

affirmed his Theft conviction. On November 15, 1996, the trial court entered a restitution order with respect to Wilson's Theft conviction. Wilson contends the trial court lacked authority to enter this order.

 "After a final judgment a court retains only such continuing jurisdiction as is permitted by the judgment itself, or as is given the court by statute or rule." *Marts v. State*, 478 N.E.2d 63, 65 (Ind.1985) (quoting *State ex rel. Kelley v. Marion Crim. Ct.*, 269 Ind. 46, 378 N.E.2d 833, 834 (1978)). A trial court does not have the inherent power to modify a sentence. *Beanblossom v. State*, 637 N.E.2d 1345, 1348 (Ind.Ct.App.1994), *trans. denied*. The requirement that a defendant pay restitution is as much a part of a criminal sentence as a fine or any other penalty. *Kotsopoulos v. State*, 654 N.E.2d 44, 46 (Ind.Ct.App.1995), *trans. denied*.

Here, the trial court entered a final judgment with respect to Wilson's Theft conviction on August 14, 1995 when it sentenced Wilson to three years, executed. The trial court's sentencing order did not purport to retain any continuing jurisdiction over Wilson. Further, as we find no statutory provision which would give the trial court jurisdiction to enhance Wilson's sentence by entering a restitution order after a sentence has already been pronounced, we hold that the trial court lacked authority to enter such an order.

The State contends that the restitution order was proper because sentencing lies within the sound discretion of the trial court and because IND. CODE § 35-50-5-3 (Supp.1995) allows a trial court to order a person convicted of a felony to make restitution to his victims. We agree that the trial court could have entered such an order when it originally sentenced Wilson for his Theft

conviction on July 19, 1995. However, it failed to do so at that time, and the trial court has since lost its authority to modify Wilson's sentence.

 The State also argues that the restitution order should be upheld because the facts in this case are analogous to those in *Greer v. State*, 680 N.E.2d 526 (Ind.1997). In *Greer*, our supreme court held that a trial court could move a habitual offender enhancement from one felony conviction to another where the original conviction to which it was attached was subsequently vacated.[1] The court reasoned that "the process for charging and determining a habitual offender status following a trial resulting in multiple felony convictions is independent of each particular felony conviction and applies equally to all such convictions." *Id.* at 527.

. The same line of reasoning used in *Greer* cannot be applied to the facts of the present case. A habitual offender finding is a jury's determination that, following a defendant's conviction for one or more felonies, the defendant has also accumulated two prior unrelated felonies. *Id.* Where a defendant is convicted of simultaneous multiple felonies and a habitual offender finding has been made, trial courts must impose the sentence enhancement upon only one of the convictions and must specify the conviction to be so enhanced. *Id.* Thus, the particular felony conviction to which the habitual offender enhancement is attached is not relevant.

 Choosing a crime on which to enter a restitution order differs from choosing a felony to enhance through a habitual offender determination. A restitution order is entered with respect to a particular conviction in order to "impress upon a criminal defendant the magnitude of the loss he has caused" as a result of his crime and "his

---

1. *Id.* at 527–28. Greer had been convicted of Robbery and Attempted Murder. *Id.* at 526. The defendant had two prior unrelated felony convictions, and the trial court attached a habitual offender enhancement to the Attempted Murder conviction. *Id.* On his first direct appeal, our supreme court reversed Greer's Attempted Murder conviction and ordered a new trial. *Id.*

The prosecution elected not to retry the defendant on the Attempted Murder charge, but instead sought to move the habitual offender enhancement to the Robbery conviction. *Id.* The trial court granted the State's request and resentenced the defendant by increasing his Robbery sentence by thirty years for the habitual offender enhancement. *Id.* at 527.

responsibility to make good that loss as completely as possible." *Kotsopoulos,* 654 N.E.2d at 46. Thus, there is a close correlation between a restitution order and the underlying crime to which it is attached. This is unlike the habitual offender enhancement which may be attached to any felony conviction where there have been multiple simultaneous felony convictions.

Given the difference between a restitution order and a habitual offender enhancement, we decline to interpret *Greer* in a manner which would allow a restitution order to be moved from one felony to another after the felony to which the order was originally attached is vacated. In the present case, if the trial court had determined that a restitution order could be attached to Wilson's Theft conviction as well as his Burglary conviction, it should have entered the order at the same time it entered its original sentence. The trial court failed to do so, and it lacked the authority to enter such an order after Wilson's Burglary conviction was vacated.

## II.

### *Silence After Miranda Warnings*

■ Wilson argues that the prosecutor committed fundamental error at trial by commenting on his decision to remain silent after he received *Miranda* warnings. Although Wilson failed to raise this contention at trial and during his first appeal, he contends that the issue is not waived because the error is fundamental. We need not address the waiver issue because we hold that the prosecutor's conduct was not improper.

■ The State violates the Due Process Clause of the Fourteenth Amendment when it uses a defendant's silence after a *Miranda* warning for impeachment purposes. *Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). Here, Detective Bundy of the Auburn Police Department attempted to interview Wilson regarding coins that were stolen from the victim. Prior to interviewing him, Bundy read Wilson his *Miranda* rights. Detective Bundy's testimony regarding that interview follows:

\* \* \* \* \* \*

QUESTIONS BY PROSECUTOR

Q: Okay. What else did you do?

A: At a later, at a later point in time I did locate Mr. Wilson and did attempt an interview on Mr. Wilson.

Q: And, and did you read Mr. Wilson his *Miranda* rights before you talked to him?

A: Yes, sir, I did.

Q: And did he agree to talk to you?

A: Yes, sir, he did.

Q: And what did he say, what did you say to him and what did he say to you?

A: I told him that I was there investigating a theft of some coins from a residence here in town. He stated he knew nothing about it. I went on to tell him it was the coins that were recovered at Butler P.D. that he is stating were his. Mr. Wilson said he had nothing to tell me at that time, he knew nothing what I was talking about. At that time the interview was concluded.

Record at 354–55. Detective Bundy's subsequent testimony during cross-examination and redirect focused on the fact that Wilson said nothing to the police about the alleged crime other than his statement that he knew nothing about it. One of the purposes of Detective Bundy's testimony was to cast doubt on Wilson's earlier statements to others wherein he claimed that he had obtained the victims' coins legitimately.

Wilson argues that his statement that he knew nothing about the stolen coins was simply an extension of his statement that he did not have anything to say to the police. As such, he argues, it amounted to an assertion of his right to remain silent. He contends that it was improper for the prosecution to use his denial of knowledge because *Doyle* protections extend to "what a defendant says" in exercising his right to remain silent. In support of this proposition, Wilson relies on *Lynch v. State,* 632 N.E.2d 341 (Ind.1994), and *Wilson v. State,* 514 N.E.2d 282 (Ind.1987).

Both *Lynch* and *Wilson* applied *Doyle* to cases where the State attempted to use a

defendant's exercise of his *Miranda* rights as evidence that the defendant was not insane at the time of his crime. In *Wilson,* the Indiana Supreme Court rejected this practice, holding that the State could not use a criminal defendant's statements exercising his right not to answer police questions to rebut the defendant's insanity defense. 514 N.E.2d at 284 (following *Wainwright v. Greenfield,* 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986)). In *Lynch,* our supreme court reaffirmed that the State may not use "what the defendant says" about his *Miranda* rights to rebut an insanity defense. 632 N.E.2d at 343. Thus, Wilson's suggestion that *Lynch* and *Wilson* hold that *Doyle* protections extend to "what the defendant said" in exercising *Miranda* rights is correct under the circumstances of those cases. However, the facts of Wilson's case differ significantly from those in *Lynch* and *Wilson.*

■ The primary justification for *Doyle* is that it is fundamentally unfair to use a defendant's silence after receiving *Miranda* warnings given that the warnings carry an implicit assurance that a person will not be penalized for exercising those rights. *Lynch,* 632 N.E.2d at 342 (citing *Doyle,* 426 U.S. at 618, 96 S.Ct. at 2245). In *Lynch* and *Wilson,* it was fundamentally unfair for the State to use the defendants' statements, made while exercising their *Miranda* rights, to rebut their insanity defense because to do so would place the defendants in the untenable position of either exercising their rights, and thereby appearing sane, or not exercising their rights and risking the dangers associated with that decision. Here, Wilson was not placed in this perilous position.

Wilson made a statement that he knew nothing about the stolen coins. Unlike the statements made by the defendants in *Wilson* and *Lynch,* Wilson's statement was not an attempt to invoke his *Miranda* rights. Rather, Wilson stated that he knew nothing about the crime, not to exercise his rights, but to exculpate himself from the crime. Just because Wilson denied knowledge of the

crime shortly before asserting his *Miranda* rights does not make it fundamentally unfair for the State to use this self-serving statement to impeach his earlier statements that he had obtained the coins legitimately.

Wilson also cites a footnote in *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), to support his proposition that *Doyle* protections extend to "what the defendant said" in exercising his *Miranda* rights. The footnote in *Anderson* commented on *Doyle* and reads:

> One [of the two defendants in *Doyle* ] said nothing at all. The other asked arresting officers, "[W]hat's this all about?" When told the reason for his arrest, he exclaimed "you got to be crazy," or "I don't know what you are talking about." Both the Court and the dissent in *Doyle* analyzed the due process question as if both defendants had remained silent.

*Anderson,* 447 U.S. at 407, n. 2, 100 S.Ct. at 2182, n. 2 (citations omitted). The *Doyle* case involved two defendants who testified at trial that they had been framed. 426 U.S. at 613, 96 S.Ct. at 2242–43. Ohio prosecutors tried to disprove this theory by eliciting testimony that the defendants failed to raise their frame-up theory with police investigators who questioned them following their arrest. *Id.* at 613–14, 96 S.Ct. at 2242–43. The Supreme Court held that it violated the Due Process Clause to penalize the defendants for exercising their *Miranda* rights by remaining silent at the time they were arrested. *Id.* at 619, 96 S.Ct. at 2245.

■ As discussed above, we agree that *Doyle* protections extend to the statements a criminal defendant makes in exercising his *Miranda* rights. However, we do not agree that the United States Supreme Court footnote cited by Wilson supports his contention that the State may not use his statement that he knew nothing about the stolen coins to impeach him.

The footnote and *Doyle* itself address a problem different from Wilson's. Although the second defendant in *Doyle* made com-

**1298**

ments similar to Wilson's, Ohio was not attempting to use these post-*Miranda* statements to impeach the *Doyle* defendant. Ohio was attempting to use the defendant's post-*Miranda silence*—his failure to tell the police that he was being framed—to impeach him. Thus, the Supreme Court in *Doyle* ignored the comments made by the defendant for purposes of analyzing the due process question before it. *Anderson*, 447 U.S. at 407, n. 2, 100 S.Ct. at 2182, n. 2.

In the present case, the State was not attempting to impeach Wilson based upon his post-*Miranda* silence. Instead, it was attempting to impeach him based upon his post-*Miranda* decision to speak for the purpose of exculpating himself. *Doyle* does not protect such statements. Accordingly, we hold that the State's use of Wilson's statement that he knew nothing about the stolen coins, for the purpose of impeaching his earlier statements that he had obtained the coins legitimately, did not violate Wilson's due process rights.

Affirmed in part, reversed in part, and remanded with instructions for the trial court to vacate its November 15, 1996 restitution order.

KIRSCH, J., concurs.

GARRARD, J., dissents in part with separate opinion.

GARRARD, Judge, dissenting in part.

While I concur in part II of the majority opinion, I respectfully dissent to the decision that the trial court could not transfer its restitution order from the burglary conviction which we vacated to the theft conviction which we affirmed. In its original sentencing order the court placed Wilson on probation for seven years of his fifteen year sentence for burglary. As a condition of that probation the court ordered Wilson to pay restitution to the victims. When we vacated the burglary conviction, the court shifted the order for restitution to the remaining theft conviction. While I agree that *Greer v.*

*State*, 680 N.E.2d 526 (Ind.1997) is not controlling, I find the situation here sufficiently similar to analogize it to that in *Greer*. Since the court originally ordered restitution as a condition of probation, I would find that it had the authority to transfer the restitution order to a different conviction in the same proceeding where, on appeal, we reversed the conviction to which the restitution order was originally attached.