

**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

FILED

Oct 02 2013, 5:43 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KAREN M. HEARD**
Vanderburgh County Public Defender's Office
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| RASHEEN MIDDLETON, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 82A01-1301-CR-8 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Kelli E. Fink, Magistrate
Cause No. 82C01-1201-FA-28

**October 2, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Rasheen Middleton appeals from his conviction and sentence for one count of class B felony Unlawful Possession of Firearm by Serious Violent Felon.[1] Middleton presents several issues for our review, which we restate as follows:

1. Did the trial court err by denying Middleton's motion for mistrial on the basis of an alleged *Doyle* [2] violation?

2. Was the evidence of Middleton's possession of a handgun sufficient to sustain his conviction?

3. Was Middleton's sentence inappropriate in light of the nature of the offense and the character of the offender?

We affirm.

The evidence most favorable to the jury's verdict establishes that on January 4, 2012, Cheryl Lemmons, Middleton's good friend, was contacted by him to come to an apartment on Lodge Avenue in Evansville. Middleton told Lemmons that he wanted to borrow some money from her. Lemmons owned a .357 magnum handgun, which Middleton had previously asked to buy from her. Lemmons had declined to sell that gun to Middleton, but later contacted him to let him know about another gun that was available for purchase. Lemmons took her handgun with her when she drove to meet with Middleton on January 4th. When Lemmons arrived at the address, she did not see Middleton, but instead, went inside the apartment and spoke with Middleton's girlfriend. After nearly twenty minutes, Lemmons left the apartment and drove home.

---

[1] Ind. Code Ann. § 35-47-4-5 (West, Westlaw current with all 2013 legislation).
[2] *Doyle v. Ohio*, 426 U.S. 610 (1976) (use of defendant's post-Miranda silence for impeachment violates the Due Process Clause of the Fourteenth Amendment).

Later on that same day, several Evansville Police Department Detectives, who were conducting an investigation, were led to investigate a residence located at 523 South Lodge Avenue, Apartment B, in Evansville. Upon their arrival, the detectives met with the homeowner, Ms. Glover, who gave the detectives her written consent to search the residence. Once the detectives entered the premises, they observed Middleton and his girlfriend, Christina Smith, lying on the living room sofa and covered with a blanket. In addition, Mr. Johnson, Ms. Glover's boyfriend, was present at the house.

Initially, Middleton was lying flat on the sofa face down, while his girlfriend was lying sideways. Middleton acted as though he had been sleeping and was startled by the presence of the detectives, and continued to do so while the detectives explained to him why they were at the house. Detective Paul Jacobs asked Middleton to remove his hands from under the blanket for officer safety reasons. At first, Middleton complied, but a few minutes later placed his hands under the blanket. Detective Jacobs once more asked Middleton to remove his hands from under the blanket because he could not see what Middleton was doing with his hands.

Middleton's girlfriend was removed from the sofa first, and Detective Mike Kennedy took her to another room to question her. After Middleton was removed from the sofa, Detective Jacobs searched the sofa, and under the cushions found a handgun and a cell phone. The items were located between the cushions on the deck of the sofa. The detectives seized those items after photographing the scene.

3

Detective Kennedy advised Middleton of his rights, which Middleton waived. Middleton spoke with the detective, but refused to answer a question about who was responsible for placing the gun under the sofa cushions. Middleton did tell the detective that he had handled the gun the previous night when he found it in a truck belonging to someone he considered to be his sister, Lemmons. As the detectives were removing Middleton from the house, he asked them if he could have his cell phone, which was found under the sofa cushions and next to the handgun.

After Middleton was removed by the detectives from the house, Smith called Lemmons and told her that Middleton had been arrested because he had a gun. Upon receiving that information, Lemmons checked to find her gun and found that it was missing. Police officers later contacted her about her gun, which was the gun that the detectives found under the sofa cushions.

Of the three counts with which the State charged Middleton, the State elected to proceed to trial first with the count alleging the handgun offense. Middleton was convicted of the handgun charge at the conclusion of his jury trial. The trial court sentenced Middleton to twelve years of imprisonment, with two years suspended to probation. The trial court also ordered that the sentence be served consecutively to any parole revocation period. Additional facts will be supplied. Middleton now appeals.

1.

Middleton first claims that the trial court erred by denying his motion for mistrial on the ground that Detective Kennedy had commented on Middleton's right to remain silent.

4

After the motion was made, the trial court held a hearing outside the presence of the jury. The trial court ultimately found that Middleton had not remained silent after he was advised of his rights. The trial court then admonished the jury to disregard the detective's last statement, because it was inaccurate. This, Middleton claims, was error.

The standard of review with respect to the issue of a motion for a mistrial is well settled and is as follows:

> Whether to grant or deny a motion for a mistrial is a decision left to the sound discretion of the trial court, as that court is in the best position to assess the circumstances of an error and its probable impact upon the jury. On appeal, we will reverse only upon an abuse of that discretion. To prevail on appeal from the denial of a motion for a mistrial, the appellant must demonstrate the statement or conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. The gravity of the peril is assessed by the probable persuasive effect of the misconduct upon the jury's decision rather than upon the degree of impropriety of the conduct. "A mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error."

*Stokes v. State*, 922 N.E.2d 758, 762-63 (Ind. Ct. App. 2010) (quoting *Warren v. State*, 725 N.E.2d 828, 833 (Ind. 2000)), *trans. denied*.

Middleton argues that his motion for mistrial should have been granted because Detective Kennedy allegedly improperly commented on Middleton's right to remain silent. A violation occurs under the Due Process Clause of the Fourteenth Amendment to the United States Constitution if the State uses a defendant's silence for impeachment purposes where the defendant was advised of his *Miranda* warnings upon his arrest. *Doyle v. Ohio*, 426 U.S. 610 (1976). We have used this principle in Indiana in cases where the State has used the defendant's post-*Miranda* silence as affirmative proof in its case. *See Francis v. State*, 758

5

N.E.2d 528, 531-32 (Ind. 2001) (inappropriate to use defendant's post-arrest, post-Miranda warning silence as affirmative proof in State's case).

During Detective Kennedy's testimony, the following exchange took place prior to the motion for mistrial:

Q:     And did you advise [Middleton] of his Miranda rights?
A:     I did, yes.
Q:     Did [Middleton] indicate that he understood his rights?
A:     He did, absolutely.
Q:     And did he waive those rights and agree to talk with you?
A:     He did.
Q:     What did you ask [Middleton] about?
A:     I asked [Middleton] who's[sic] gun it was and if the gun belonged to him or if he had handled the gun recently.
Q:     And what statements, if any, did he make to you?
A:     Mr. Middleton told me that he had handled the gun the previous night, he was cleaning out or going through a truck that belonged to a female he claimed to be his sister, when he was going through her vehicle he located the gun inside the vehicle, got the gun out, handled the gun, and claimed that he, admitted that his DNA or fingerprints, excuse me, his DNA may be on the gun because he did handle it the previous night.
Q:     Did you ask him anything else in regard to the gun?
A:     I did, I asked him who put the gun underneath the couch cushions.?
Q:     And what was his response?
A:     At that point he said he did not know and didn't want to talk about it anymore.

*Transcript* at 54-55. Detective Kennedy then responded in the affirmative that he ceased his questioning of Middleton after he refused to say anything more about the placement of the gun. Middleton's counsel then moved for a mistrial alleging the *Doyle* violation.

The trial court did not err in denying the motion for mistrial on this basis. Here, there was no commentary before the jury about Middleton's right to remain silent. Detective

Kennedy testified about Middleton's response and that he ceased questioning Middleton thereafter. Middleton was advised of his rights and waived those rights. He answered Detective Kennedy's questions during which he provided an exculpatory explanation for the potential discovery of his DNA on the gun. In *Sylvester v. State*, 698 N.E.2d 1126, 1131 (Ind. 1998), for example, our Supreme Court held that "[w]here a defendant chooses to fabricate a story, he has not remained silent and cannot claim a *Doyle* violation."

Additionally, the detective's testimony was that after asking Middleton who had placed the gun under the cushions, Middleton replied that he did not know and did not want to discuss it any further. Middleton's comment, again, was exculpatory. Where a defendant claims that he knows nothing more about a crime, that statement does not amount to an assertion of a right to remain silent such that it would support an alleged *Doyle* violation. *Wilson v. State*, 688 N.E.2d 1293 (Ind. Ct. App. 1997). Middleton has failed to establish that the trial court abused its discretion by denying the motion.

We note that the audio recording of Detective Kennedy's questioning of Middleton includes passages that are difficult to comprehend. In some instances there are two people speaking at the same time, and in other instances the recording is simply inaudible. During the hearing on Middleton's motion to suppress any statement that followed he statement that he "didn't want to talk about it anymore", Middleton's counsel argued that a transcript prepared for the defense was a more accurate representation of the questioning than that audio recording. That transcription was offered by the State for purposes of that suppression hearing as State's Exhibit 3A. The transcription provides that Middleton's answer was "I

7

don't want to answer the question because it's not my pistol and I don't want (inaudible 7:50) I'm being truthful . . . you know what I'm saying." *State's Exhibit 3A* at 2. Middleton then continues to discuss the gun and the presence of his DNA on the gun. "An assertion of *Miranda* rights must be clear and unequivocal, and in determining whether a person has asserted his or her rights, the defendant's statements are considered as a whole." *Clark v. State*, 808 N.E.2 d 1183, 1190 (Ind. 2004). Here there was no clear and unequivocal assertion of Middleton's right to remain silent.

The trial court chose to admonish the jury about Detective Kennedy's statement prior to the motion for mistrial, finding the statement to be untrue. Again, we find the trial court acted appropriately. "When the jury is admonished by the trial judge to disregard what has occurred at trial or when other reasonable curative measures are taken, no reversible error in denying a mistrial will normally be found." *Wagner v. State*, 474 N.E.2d 476, 489 (Ind. 1985). Here, in paraphrasing his questioning of Middleton, Detective Kennedy stated that when asked who placed the handgun under the cushion, Middleton replied that he did not know, did not want to say anything more about it, and that the questioning ceased. The trial court correctly found that this paraphrase was inaccurate. Indeed, using the transcription, which Middleton argued was more accurate, when asked about the mechanics of the handgun, Middleton stated that he did not want to answer the question because it was not his gun. Middleton then continued to discuss the presence of his DNA on the handgun, and answered many other questions about Middleton's presence at the residence. Although there are not particular words a defendant must utter in order to cease questioning, where a

defendant indicates that he or she is tired of talking, or through with this, and continues to answer questions without pausing or further indicating a wish to no longer respond, we have found no assertion of a right to remain silent. *Washington v. State*, 808 N.E.2d 617 (Ind. 2004); *Haviland v. State*, 677 N.E.2d 509 (Ind. 1997). Consequently, the detective's paraphrase of the questioning was inaccurate, and the trial court correctly found that an admonishment to the jury to disregard the inaccuracy was necessary. Since there was no *Doyle* violation, the trial court correctly denied the motion for mistrial.

2.

Middleton next contends that the evidence of his possession of the handgun was insufficient to support his conviction. Our standard of review of such matters is well settled and is as follows:

> [w]hen reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id*. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id*.

*Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009).

In order to establish that Middleton had committed the offense, the State was required to prove beyond a reasonable doubt in pertinent part that Middleton previously had been convicted of committing a serious violent felony and later knowingly or intentionally possessed a firearm. I.C. § 35-47-4-5(c). One of the statutorily enumerated offenses that classifies a person as a "serious violent felon" is robbery. I.C. § 35-47-4-5(a) and (b).

9

Middleton does not challenge the State's presentation of evidence of his prior robbery conviction. Instead, Middleton challenges the sufficiency of the State's evidence that he possessed the firearm found in the residence.

A defendant's possession of a firearm may be either actual or constructive. *Causey v. State*, 808 N.E.2d 139 (Ind. Ct. App. 2004). The *Causey* opinion further explains the analysis that should follow in determining either type of possession:

> However, constructive possession occurs when the person has the intent and capability to maintain dominion and control over the firearm. To prove the element of intent, the State must demonstrate the defendant's knowledge of the presence of the firearm. Knowledge may be inferred from either exclusive dominion and control over the premises containing the firearm, or from evidence of additional circumstances indicating the defendant's knowledge of the presence of the firearm.
>
> The following types of evidence are among those utilized by the State to show proof of the defendant's dominion and control over a firearm: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) proximity of the firearm to the defendant; (4) location of the firearm within the defendant's plain view; and (5) the mingling of a firearm with other items owned by the defendant. The State must also present evidence demonstrating the defendant's capability to exercise control over the firearm, which includes the ability to reduce the firearm to his personal possession or to otherwise direct its disposition or use.

808 N.E.2d at 143.

In the present case, sufficient evidence is present to establish Middleton's actual and constructive possession of the handgun, but we need analyze only the evidence of actual possession. The firearm was found under the sofa cushion where Middleton had been lying. It would have been difficult for Middleton not to have noticed the firearm. "We think it would be difficult to sit on a handgun without knowledge of its presence and without the

10

intent and ability to exercise dominion and control over the handgun." *Collins v. State*, 822 N.E.2d 214, 222 (Ind. Ct. App. 2005). Similarly, we think it would be difficult for Middleton to have lain on the sofa without knowledge of its presence and without the intent and ability to exercise dominion and control over it. Additionally, Middleton admitted to Detective Kennedy that he had taken the gun the night before from Lemmons's truck and had handled the gun. Given this admission of actual possession of the handgun, no further analysis is required. *See Williams v. State*, 834 N.E.2d 225, 229 (Ind. Ct. App. 2005) (unnecessary to analyze whether discovery of gun under mattress where only defendant slept established possession where evidence of actual possession was present). There was sufficient evidence of Middleton's possession of the handgun.

3.

Middleton next challenges his sentence, contending that it is inappropriate in light of the nature of the offense and the character of the offender. The trial court sentenced Middleton to twelve years of imprisonment, with two years suspended to probation. The trial court also ordered that the sentence be served consecutively to any parole revocation period. The sentencing range for a class B felony conviction is a fixed term of imprisonment between six and twenty years with the advisory sentence being ten years. Ind. Code Ann. § 35-50-2-5 (West, Westlaw current with all 2013 legislation).

Appellate courts may revise a sentence after careful review of the trial court's decision if they conclude that the sentence is inappropriate based on the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). Even if the trial court followed the

appropriate procedure in arriving at its sentence, the appellate court still maintains a constitutional power to revise a sentence it finds inappropriate. *Hope v. State*, 834 N.E.2d 713 (Ind. Ct. App. 2005). "We recognize, however, the special expertise of the trial courts in making sentencing decisions; thus, we exercise with great restraint our responsibility to review and revise sentences." *Scott v. State*, 840 N.E.2d 376, 381 (Ind. Ct. App. 2006), *trans. denied*. The defendant has the burden of persuading the appellate court that his sentence is inappropriate. *King v. State*, 894 N.E.2d 265 (Ind. Ct. App. 2008).

Whether we regard a sentence as appropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Furthermore, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Id*. at 1225. Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original).

We first note that the trial court imposed a sentence of twelve years imprisonment, with two years suspended to probation. The executed portion of Middleton's sentence is the equivalent of the advisory sentence for a class B felony, ten years. I.C. § 35-50-2-5. That

12

said, the complete sentence imposed totals twelve years, two years above the advisory sentence for Middleton's offense.

As for the nature of the offense, we note that Middleton, a serious violent felon, should not have been in possession of a firearm. He did so in a place where illegal drugs were found and were being manufactured. Middleton was also charged with conspiring to deal in methamphetamine and possession of methamphetamine at the time he was charged with the present offense. The State elected to proceed on the charge at issue here first. Middleton also stated at sentencing that he was unaware that methamphetamine was being manufactured at the residence where he was located by the detectives. During sentencing, Middleton admitted that he had been smoking methamphetamine with his girlfriend the entire night prior to his arrest. Based upon the factors present, the possession of a firearm by a serious violent felon who had consumed illegal drugs, at a location where methamphetamine was being produced, we conclude that Middleton has failed to meet his burden of convincing us that his sentence is inappropriate on the nature of the offense.

As for Middleton's character, we note that he is twenty-four years old. Middleton's substance abuse problem began when he was twelve years old and has escalated. Middleton has little education, and a virtually non-existent employment history. Middleton's use of illegal drugs further demonstrates his disregard for leading a law-abiding life, and the commission of offense, beyond those reflected by his actual criminal history. Again, Middleton has failed to meet his burden of convincing us that his sentence is inappropriate.

The trial court's decision to impose the twelve-year sentence with two years suspended to probation is not inappropriate in light of the nature of the offense and the character of the offender. *See Lewis v. State*, 949 N.E.2d 1243, 1247 (Ind. 2011) (twelve-year sentence imposed on conviction for unlawful possession of a firearm by a serious violent felon was not inappropriate).

Judgment affirmed.

BAKER, J., and VAIDIK, J., concur.